UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Katie Thibodeaux | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Ira Nasserian | Matthew Smock, AUSA |

**Proceedings:** PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 29, filed on NOVEMBER 22, 2021)

DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT (DKT. 30, FILED ON DECEMBER 13, 2021)

## I.   INTRODUCTION

This case centers around the review of the Department of Labor Administrative Review Board's ("ARB's") decision to require a company to pay back wages to a former employee, who was employed under the E-3 visa program provision of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 110(a)(15)(E)(iii).  On January 11, 2021, plaintiff Persian Broadcast Service Global Inc. ("Persian Broadcast") filed this action against defendants Martin J. Walsh,[1] in his official capacity as United States Secretary of Labor, the United States Department of Labor, and Majid Varess, collectively ("defendants").  Dkt. 1 ("Compl.").

Defendant Varess, an Australian citizen who previously worked for Persian Broadcast, filed an administrative complaint against Persian Broadcast for back wages with the U.S. Department of Labor and prevailed.  Id.  Persian Broadcast now seeks review of the agency action under the Administrative Procedures Act, 5 U.S.C. § 702 et seq. ("APA"), alleging that (1) the Department of Labor's finding that Varess's complaint

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Martin J. Walsh, the current Secretary of the United States Department of Labor, is automatically substituted as the proper defendant in this action in place of Eugene Scalia.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O' JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

was timely filed, and (2) the agency's calculation of back wages owed to Varess were both arbitrary, capricious, and contrary to law under 5 U.S.C. § 706(2).

On May 13, 2021, defendants Martin J. Walsh, in his official capacity, and the U.S. Department of Labor (collectively, "federal defendants"), filed a counterclaim against Persian Broadcast. Dkt. 11. The federal defendants' counterclaim seeks to enforce the Department of Labor's final order mandating the payment of back wages, plus interest, owed by plaintiff for violating the INA's E-3 visa program requirements. Id. ¶ 1-3. 8 U.S.C. § 1182(t); 28 U.S.C. § 3001.

On August 10, 2021, the Court dismissed this action as to defendant Majid Varess for plaintiff's failure to prosecute and for its failure to comply with Federal Rule of Civil Procedure ("Rule") 78 and Local Rule 7.15, after plaintiff failed to respond to the Court's Order to Show Cause from July 1, 2021. Dkt. 18.

On November 11, 2021, plaintiff filed a motion for summary judgment. Dkt. 29 ("Pltf. MSJ"). On December 13, 2021, defendants concurrently filed a cross-motion for summary judgment and opposition. Dkt. 30 ("Def. MSJ"). On January 3, 2022, plaintiff filed an opposition to defendants' cross-motion. Dkt. 32. On January 24, 2022, defendants filed a reply in support of their cross-motion. Dkt. 33. On February 7, 2022, the Court held a hearing.

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

### A. The Parties and Factual Background

Plaintiff Persian Broadcast, a corporation incorporated under the laws of the State of California, is a Farsi-language television station that serves the Persian community. Dkt. 30-1 (Defendant Statement of Uncontroverted Facts) ("Def. SUF") at ¶ 1. See also Compl. ¶ 1; Dkt. No. 22 (Certified Administrative Record) ("CAR"). Persian Broadcast's president and Chief Operating Officer is Amir Shadjareh. Def. SUF ¶ 2.

Defendant Martin J. Walsh, in his official capacity, is the Secretary of Labor and charged with the supervision and management of all decisions within the U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

Department of Labor. Compl. ¶ 5. The U.S. Department of Labor is an administrative agency responsible for issuing labor condition attestations in connection with employer petitions for authorization to employee E-3 workers and for enforcing compliance with labor-related conditions of the H-2B program. Id. ¶ 6; 8 C.F.R. § 214.2(h)(6)(ix).

Defendant Majid Varess is an Australian national of Iranian origin who has worked since 1974 as a sports reporter and producer. Id. ¶ 3. In 2011, Persian Broadcast filed an application for E-3 nonimmigrant status on behalf of Majid Varess to allow Varess to enter the United States and produce programming for Persian Broadcast's televised broadcast for a period of two years. Dkt. 29-1 (Plaintiff Statement of Uncontroverted Facts) ("Pltf. SUF") at ¶ 4. Varess alleges that even though there were financial costs he incurred associated with moving to the United States including airfare, rent payments, furniture, and appliances, Varess accepted the position because he viewed the position as a unique late-career opportunity to broadcast sports in Farsi for a station that shared his opposition to the Iranian regime. Def. SUF ¶¶ 5-7.

To employ Varess, Persian Broadcast filed a Labor Condition Application ("LCA") with the Department of Labor in September 2011. Def. SUF ¶ 8. The LCA indicated that Persian Broadcast would be employing a "TV producer and reporter" and that the prevailing wage rate for this position was $44,013 per year, and Varess would be paid $45,000 per year. Def. SUF ¶ 9. The Department of Labor approved the LCA for a period from September 12, 2011, to September 12, 2013. Def. SUF ¶ 10. On November 23, 2011, Varess entered the United States on an E-3 Visa. Def. SUF ¶ 11; Pltf. SUF ¶ 5. Varess worked for Persian Broadcast both in the United States and from other locations around the world, leaving and returning to the United States many times during the course of his work and reporting on sporting events from England, Ireland, Belgium, France, and Australia. Def. SUF ¶ 14, 15. For instance, Varess departed the U.S. on August 19, 2012, and returned on October 17, 2012; Varess again departed the U.S. on January 14, 2013, and returned on May 17, 2013. Pltf. SUF ¶¶ 6-9. Varess estimates that he worked between 60 to 70 hours per week during his employment for Persian Broadcast. Def. SUF ¶ 13. To perform his duties overseas, Varess uploaded the shows he produced using the internet, and Persian Broadcast broadcasted the shows via satellite. Def. SUF ¶ 17. While abroad, Varess continued to produce and host sports programs for Persian Broadcast. Pltf. SUF ¶ 10. Varess temporarily departed the United States on July 14, 2013. Def. SUF ¶ 22; Pltf. SUF ¶ 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

In August 2013, Persian Broadcast filed a second LCA to continue Varess's employment. Def. SUF ¶ 19. The second LCA listed the prevailing wage rate as $59,384 and stated that Varess would be paid an annual salary of $60,000. Def. SUF ¶ 20. On August 30, 2013, the Department of Labor approved the second LCA for a period from September 12, 2013 to September 12, 2015. Def. SUF ¶ 21. Varess's original LCA and E-3 visa expired on September 12, 2013. Pltf. SUF ¶ 14. When Varess reentered the United State on September 3, 2013, the Department of Homeland Security's Customs and Border Protection ("CBP") admitted him for an additional two years, informing Varess he could remain and work in the United States until September 2015. Def. SUF ¶ 22.

Varess continued working for Persian Broadcast in the United States until November 16, 2013, when he left the United States and traveled to Australia. Def. SUF ¶¶ 23-24. Prior to Varess's departure from the United States in November 2013, Shadjareh signed a letter to the U.S. Consulate in Sydney, Australia in support of Varess's application to renew his E-3 visa and stating that Persian Broadcast desired to continue to employ Varess at a salary of $60,000 per year. Def. SUF ¶ 25. Varess states he initially intended to renew his visa in Australia, however he ultimately did not renew the E-3 visa. Def. SUF ¶¶ 26-27; CAR 466 (Varess testified that he paid a fee for an application renewal and initially attempted to renew the visa, but eventually withdrew the application). Varess further states the main reason he did not renew his visa is because of Persian Broadcast's failure to pay him. Def. SUF ¶ 27. Varess did not return to the United States after November 16, 2013. Def. SUF ¶ 27. However, Varess continued to work for Persian Broadcast from overseas until July 14, 2014. Def. SUF ¶ 28.

Throughout Varess's employment Persian Broadcast paid him irregularly and sporadically in amounts between $300 and $2,300, for a total of approximately $20,000. Def. SUF ¶ 29. When Varess brought up the issues regarding his wages, Shadjareh responded that Persian Broadcast was having financial difficulties and promised to pay him later. Def. SUF ¶ 30. Varess states that he continued to work for Persian Broadcast despite the payment issues because he had invested in the position, he wanted to preserve his professional reputation, and he wanted to work for a company that opposed the Iranian regime. Def. SUF ¶ 31. On July 11, 2014, Shadjareh informed Varess, via text message, that he could "no longer afford to pay" him. Def. SUF ¶ 32. Varess did not perform any more work for Persian Broadcast after the text message; however, Varess states he did not interpret the text message as a notice of termination. Def. SUF ¶¶ 33-34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O' JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

      **B.**    **Statutory and Regulatory Background**

    Under the Immigration and Nationality Act, the E-3 visa program allows Australian nationals to work in the United States temporarily in specialty occupations. 8 U.S.C. § 1101(a)(15)(E)(iii). To employ an E-3 worker, an employer must file a Labor Conditions Application with the Department of Labor stating its intention to employ a nonimmigrant in a particular occupation. 8 U.S.C. § 1182(t); 20 C.F.R. § 655.700. After the Department of Labor certifies the LCA, the worker applies to the Department of State for a visa, which, if granted, allows the worker to enter the United States for a two-year period. 20 C.R.F. §§ 655.705(b); 655.750(a); 22 C.F.R. § 41.51(c).[2]

    The LCA contains certain binding attestations, one of which is that during the period of authorized employment, the employer must pay a required wage which is the higher of "the actual wage level paid by the employer to all other individuals with similar experience and qualifications for the specific employment in question," or "the prevailing wage level for the occupational classification in the area of employment." 8 U.S.C. § 1182(t)(1)(A)(i).

    An employer is required to pay an E-3 employee on nonproductive status unless an exception applies. Under the statute, an employer is not required to pay an E-3 employee on nonproductive status when (1) there are conditions unrelated to employment which take the nonimmigrant away from his duties at his voluntary request and convenience (e.g., touring the U.S., caring for ill relative) or render the nonimmigrant unable to work (e.g., maternity leave, automobile accident) or (2) there is a *bona fide* termination of the employment relationship. 8 U.S.C. § 1182(t)(3)(C)(vii)(I)-(II); 20 C.F.R. § 655.731(c)(7)(i)-(ii).

    The Department of Labor enforces the requirements of the E-3 visa. 8 U.S.C. § 1182(t)(3). An aggrieved party must file a complaint with the Department of Labor's

---

[2] The requirements and enforcement mechanisms for E-3 visas are largely, though not entirely, identical to those for the H-1B visa program, which applies to temporary foreign workers in specialty occupations generally. 20 C.F.R. § 655.700(d)(2). One distinction between H-1B visa program and E-3 visa program is that an employer is not required to file a petition to the Department of Homeland Security to employ an E-3 worker. 70 Fed. Reg. 52,292 (Sept. 2, 2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

Wage and Hour Division. 20 C.F.R. §§ 655.800(a); 806(a). "A complaint must be filed not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the employer allergy failed to perform an action or fulfill a condition specified in the LCA." 20 C.F.R. §§ 655.806(a)(5). After the Wage and Hour Division investigates the complaint, it issues a determination and any remedies, including the payment of any back wages due. 20 C.F.R. §§ 655.806(a)(3), (b); 655.810(a), 655.815. The Wage and Hour Division's determinations can be challenged in a hearing before an administrative law judge, and the administrative law judge's decision can be appealed to the Department's Administrative Review Board. 20 C.F.R. §§ 655.820; 655.845. If the Secretary of Labor does not review the Administrative Review Board's order, it becomes the final Department of Labor Order. 85 Fed. Reg. 13,186 (Mar. 6, 2020).

    **C.**    **Administrative History**

On February 5, 2015, Varess filed a complaint with the United State Department of Labor, Wage and Hour Division alleging that Persian Broadcast failed to pay him the required wages under the two LCAs. Def. SUF ¶ 35. Varess's written complaint referred to an earlier telephonic complaint made on December 9, 2014. Def. SUF ¶ 36. On March 18, 2015, Varess submitted a completed Nonimmigrant Worker Information Form (WFI-4) describing the wage violation, including a constructive termination in July 2014. Pltf. SUF ¶ 18. The Wage and Hour Division investigated the complaint and issued a determination on March 28, 2016, finding that no violation had occurred. Def. SUF ¶ 37. Varess then requested a hearing before an administrative law judge ("ALJ"). Def. SUF ¶ 38.

On December 14, 2017, the ALJ found that Varess was not an employee of Persian Broadcast entitled to a salary and denied relief to Varess. Def. SUF ¶ 39. Varess appealed the ALJ's decision to the Administrative Review Board ("ARB"). Def. SUF ¶ 40. On September 26, 2019, the ARB reversed the decision of the ALJ, concluding that Persian Broadcast was required to pay Varess the wages specified in the LCAs. Def. SUF ¶ 41. The ARB found that (1) Varess entered into employment with Persian Broadcast, (2) Persian Broadcast never effected a *bona fide* termination, (3) Varess never entered into voluntary nonproductive status, and (4) any misrepresentations Varess may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

have made did not relieve Persian Broadcast of its obligations. CAR 812.³ The ARB then remanded the case to the ALJ for determinations on the timeliness of Varess's complaint and on any damages owed. Def. SUF ¶ 41.

On October 30, 2019, the ALJ issued a decision on remand, concluding that Varess's complaint was timely filed, and that Persian Broadcast owed Varess $183,794 in back wages plus pre- and post-judgment interest. Def. SUF ¶ 42. The ALJ concluded that neither Varess's failure to renew his visa nor his departure from the United States vitiated Persian Broadcast's responsibilities under the LCAs. CAR 823-24. Further, the ALJ held that Persian Broadcast's violations continued until the end of the second LCA period in September 2015. Id. On November 26, 2019, Persian Broadcast appealed the ALJs decision on remand. Def. SUF ¶ 43. On July 14, 2020, the ARB affirmed the ALJ's decision on remand. Def. SUF ¶ 44. Persian Broadcast has not paid the amount it owes Varess pursuant to the ARB's final order. Def. SUF ¶ 45.

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The

---

³ Persian Broadcast argued to the ARB that Varess misled Persian Broadcast by "handling all the paperwork, making all the arrangements, and misrepresenting the binding nature of the LCAs." CAR 813-14. The ARB found that Varess's alleged misconduct does not affect Persian Broadcast's duty as the employer to pay the wages set in the LCAs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**B.  APA Standard of Review**

Under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (the "APA"), a court shall hold unlawful and set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." A court is not empowered by section 706(2)(A) to substitute its judgment for that of the administrative agency. Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). A court may reverse an agency decision under the arbitrary and capricious standard "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Greater Yellowstone Coalition v. Lewis, 628 F.3d 1143, 1148 (9th Cir. 2010) (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

For purposes of APA review, the agency's factual findings are reviewed for substantial evidence, and the Court will not disturb the agency's findings unless the "evidence presented would compel a reasonable finder of fact to reach a contrary result." Family Inc. v. USCIS, 469 F.3d 1313, 1316 (9th Cir. 2006). When reviewing a final agency action, the district court sits as an appellate tribunal and must determine "as a matter of law if the evidence in the administrative record permitted the agency to make the decision it did. Rhoads v. U.S. Dept of Veterans Affs., 242 F. Supp. 3d 985, 990 (E.D. Cal. 2017) (quoting Occidental Eng'g Co. v. I.N.S., 753 F. 2d at 769).

## IV.  DISCUSSION

Persian Broadcast argues that the Court should set aside the Department of Labor ARB's decision under the APA as arbitrary and capricious on two grounds. First, Persian Broadcast argues that Varess has no remedy for its violation because Varess's administrative complaint to the Department of Labor was time barred. Second, Persian Broadcast argues that the Department of Labor's calculation of back pay owed to Varess was arbitrary and capricious because it was not required to pay Varess under the second LCA because his E-3 visa expired and he left the country. The Court addresses these arguments in turn.

### A.  The ARB's Timeliness Finding

Persian Broadcast contends that the ARB erred in finding that Varess's complaint was timely filed under 20 C.F.R. § 655.806(a)(5). Pltf. MSJ at 13. Under 20 C.F.R. § 655.806(a)(5) a complainant must file a complaint alleging a violation of the nonimmigrant worker regulations not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the employer allegedly failed to perform an action or fulfill a condition specified in the LCA, or the date on which the employer, through its action or inaction, allegedly demonstrated a misrepresentation of material fact in the LCA.

Persian Broadcast argues that Varess filed his administrative complaint outside of the 12 month period prescribed by the regulations. Pltf. MSJ at 13. Persian Broadcast argues that the two LCAs it signed only cover a "period of authorized employment," and Varess was not an authorized employee after the first LCA ended, because Varess was not properly issued another E-3 visa by the United States Customs and Immigration

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

Services ("USCIS") when his second LCA started. 20 C.F.R. § 655.730(c)(2). Persian Broadcast notes that obtaining an LCA from the Department of Labor is only the first step in receiving an E-3 visa; after, the employee must take the LCA to the U.S. Department of State to receive an E-3 visa stamp. Pltf. MSJ at 15. According to Persian Broadcast, Varess's employment terminated after the first LCA ended on September 12, 2013, because his E-3 visa was not renewed properly. Id. at 15. Persian Broadcast contends that the admitting officer made a procedural error when Varess was readmitted to the United States on September 3, 2013, and given status as an E-3 employee until September 2, 2015, because his LCA expired on September 12, 2013, and he was no longer in the United States legally under E-3 status. Pltf. MSJ at 18.[4] Therefore, Persian Broadcast argues that Varess's filing of the administrative complaint on February 5, 2015, was over a year after its "alleged violation," and outside the authorized statutory time to file a complaint. 20 C.F.R. 655.806(a)(5).

Additionally, Persian Broadcast argues that even if the Court accepts that Varess was considered to have legal E-3 status while in the United States, Varess's departure from the United States on November 16, 2013, and his subsequent decision not to renew his E-3 visa in Australia absolved Persian Broadcast of any obligation under the second LCA. Pltf. MSJ at 20. Persian Broadcast's argument centers around the idea that "one cannot be in authorized employment status in the US if one is not physically in the US." Id. at 21. Under its alternative argument, the latest date in which Persian Broadcast allegedly failed to perform an action would be November 16, 2013, which it notes is still more than a year before Varess filed his administrative complaint in February 2015.

Defendants assert that Varess's administrative complaint was timely filed, because Persian Broadcast's failure to pay wages was a continuing violation, and therefore when Varess filed the complaint in February 2015, the limitations period had not even begun to run. Def. MSJ at 19. Defendants argue that Persian Broadcast's wage obligation did not

---

[4] Plaintiff cites to the American Immigration Lawyers Association Practice Tips Regarding Individuals Admitted in E-3 Status, AILA Doc. No. 08092970 to support its argument. Since this document was not considered by the administrative agency, the Court may not, and does not, consider it. See Lands Council v. Powell, 395 F.3d 1019, 1029 (9th Cir. 2005) (noting that "the Supreme Court has expressed a general rule that courts reviewing an agency decision are limited to the administrative record").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'   JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

terminate in September 2013, when Varess's E-3 visa expired, nor in November 2013, when Varess left the United States, because Varess's non-renewal of his visa and departure from the United States did not affect the binding nature of the second LCA. Def. MSJ at 20. In the alternative, defendants argue that under the conclusion that Persian Broadcast's nonpayment of wages and Varess's decision to stop working for Varess in July 2014 constituted Persian Broadcast's last violation, Varess's administrative complaint in February 2015 would still be timely. Def. MSJ at 20.

      The ARB found that Varess's complaint was timely, determining that the second LCA was binding because it was "signed by [Persian Broadcast], certified by the [Department of Labor], and constituted an obligation [Persian Broadcast] had to abide by until the expiration of the LCA period or an exception to that obligation was satisfied." CAR 815. Further, the ALJ held, and the ARB affirmed, that Persian Broadcast was "liable to pay wages for the duration of the second LCA (September 12, 2013, to September 12, 2015) and the reasons [Persian Broadcast] provide[d] for why the second LCA was invalid do not relieve it of its obligations." CAR-973 (ARB Case No. 2020-0017). Therefore, the ARB concluded that a complaint filed on February 5, 2015, would be timely because any nonpayment of wages during the second LCA period would start the clock as a failure to perform an action, and the LCA period was still ongoing when Varess filed his complaint. Id. Alternatively, the ARB noted that it was on July 11, 2014, when Persian Broadcast notified Varess it could no longer pay him, and therefore if this was considered a notice of an adverse action, then a complaint filed on February 5, 2015, would still be timely. Id. Under either alternative, the ARB found the administrative complaint was timely. Id.

      "By submitting a signed and completed LCA, the employer makes certain representations and agrees to several attestations regarding the employer's responsibilities, including the wages, working conditions, and benefits to be provided to the E-3 [] immigrant." 20 C.F.R. § 655.700(d)(4)(i). The administrative record makes clear, and the parties do not dispute, that Persian Broadcast signed both LCAs.

      The Court concludes that the ARB's holdings are consistent with the interpretation of 8 U.S.C. § 1101(a)(15)(E)(iii) and its accompanying regulations. C.F.R. §§ 655.806(a)(5). The arbitrary and capricious standard is a deferential standard, and the scope of a court's review is narrow; the court is not to substitute its judgment for that of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

the agency's. See Judulang v. Holder, 565 U.S. 42, 52-53 (2011). The Court may not "disturb the agency's findings under this deferential standard unless the evidence presented would compel a reasonable finder of fact to reach a contrary result." Family Inc. v. USCIS, 469 F.3d 1313, 1315 (9th Cir. 2006) (internal citation omitted). The Court finds that the administrative record supports the ARB's finding that under one of two alternative theories, Varess's complaint was timely, and the ARB's holding is not arbitrary, capricious, or an abuse of discretion.

The Court notes that the administrative record shows that Amir Shadjareh, president of Persian Broadcast, signed a second LCA—which covers the period from September 12, 2013 to September 12, 2015—agreeing "to all four(4) labor condition statements summarized," including that Persian Broadcast will "pay nonimmigrants at least the local prevailing wage or the employer's actual wage, whichever is higher, and pay for nonproductive time." Dkt. 22-1, CAR at 24 ("Labor Conditions Application for Nonimmigrant Workers ETA Form 9035 & 9035E). Neither the text of the statute nor the regulations nor the LCA itself support Persian Broadcast's argument that an employee's non-renewal of an E-3 visa or the departure of an employee from the United States, terminate the "period of authorized employment" and discharge an employer's responsibilities to continue to pay the employee under the LCA. An employer's consistent and continual failure to pay the required wage, including failing to pay for nonproductive time, is a continuing violation. Administrator v. ME Global, 2019 WL 3293915, at *7 (ARB Mar. 22, 2019). Therefore, Varess's complaint, filed in February 2015, was timely since it was filed within one year of Persian Broadcast's failure to pay Varess the required wage under the LCA. Id.; See generally National R. R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002) (finding that if an employee files an administrative complaint to the appropriate agency within the statutory period, then he may recover under Title VII, even if some of the employer's violation fell outside of the statutory period).

 **B. The ARB's Award to Varess**

Persian Broadcast argues that if the Court finds that Varess's administrative complaint was timely filed, the Court should rule that the Department of Labor's award to Varess of $183,974.00 is arbitrary, capricious, and contrary to law. Pltf. MSJ at 22. 5 U.S.C. § 706(2). Persian Broadcast argues that the award of back wages is excessive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

because it is only required to pay wages under the first LCA, and the administrative award calculates payment of wages for the entirety of both LCAs. Pltf. MSJ at 22. Persian Broadcast argues that the second LCA, which spanned from September 12, 2013 to September 12, 2015, was not an enforceable employment agreement for two reasons. Id. (citing to CAR at 645, Decision of ALJ, Dec. 11, 2017) ("An LCA is not an employment contract").

First, Persian Broadcast reasons that the second LCA is not enforceable because Varess's second E-3 visa was not properly issued. Pltf. MSJ at 17. Persian Broadcast argues that in order for an employer to be bound by the LCA, the employee must "enter into employment," under the language of 20 C.F.R. §655.731(c)(6) (an E-3 nonimmigrant "enters into employment" when he makes himself available to work or otherwise comes under the control of the employer"). Persian Broadcast alleges that under the statutory language, Varess needed to obtain another E-3 visa after his initial visa expired on September 12, 2013 to enter into employment with Persian Broadcast, and because Varess did not complete his E-3 visa application, it is relieved of any potential liability under the second LCA.[5] Pltf. MSJ at 24.

In the alternative, Persian Broadcast reasons that if Varess did "enter into employment" under the second LCA when Customs and Border Protection admitted Varess back into the United States on September 3, 2013, his authorization ended when Varess returned to Australia in November 2013. Pltf. MSJ at 17; 20 C.F.R. § 655.731(c)(7). Persian Broadcast cites to 20 C.F.R. § 665.750(a), which states that an LCA is only valid during the "period of authorized employment," and argues that Varess was no longer an authorized employee when he returned to Australia. Id.

Defendants respond that the ARB's decision was not arbitrary and capricious, and is supported by substantial evidence in the administrative record. Def. MSJ at 9. Defendants note that Persian Broadcast does not dispute that the first LCA was valid, nor that the Department of Labor approved the second LCA, nor that Varess began the

---

[5] During oral argument, counsel for plaintiff emphasized that the fact that Varess withdrew his second E-3 visa application demonstrates that Varess no longer wished to work for Persian Broadcast, and that therefore Persian Broadcast is not liable for back wages under the second LCA. Def. SUF ¶¶ 26-27; CAR 466.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'   JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

second LCA period working for Persian Broadcast in the United States. Id. Defendants emphasize that Persian Broadcast was required by its own binding attestation in the LCA, and by the regulations of the Immigration and Nationality Act, to pay Varess the greater of the prevailing wage level for the occupational classification in the area of employment or the actual wage level it paid to all other individuals with similar experience and qualifications. 20 C.F.R. § 655.731(a).

Citing to the regulations addressing circumstances in which employers need not pay the required wage, defendants note that the regulations do not contain exceptions from the wage requirement for visa expiration or travel abroad—the two reasons Persian Broadcast relies on to argue it does not have to pay back wages. Def MSJ at 11; 20 C.F.R. § 655.731(c)(7)(ii). Defendants note that the regulations make clear that the only circumstances in which employers need not pay is (1) if the employee is in nonproductive status under narrow circumstances that do not apply to Varess's situation or (2) if there is a *bona fide* termination. Id. Defendants contend that neither of these two explicit exceptions exempting an employer from paying an E-3 worker's wages apply in Varess's case. 8 U.S.C. § 1882(t)(3)(C)(vii)(IV).

The first exception—that an employer need not pay an E-3 worker during a period of nonproductive status that is due to non-work-related factors that take the nonimmigrant away from work for the worker's convenience or that render the nonimmigrant unable to work—did not apply to Varess when he departed from the United States, because Varess's duties, such as reporting "live from relevant sporting arenas," included off-site work, and therefore his travel did not render him nonproductive or unable to work. Def. MSJ at 14; CAR 357.

The second exception—*bona fide* termination of the employment relationship—did not apply because Persian Broadcast did not meet the requirements of *bona fide* termination such as notifying United States Customs and Immigration Services nor notifying Varess himself that his employment was terminated. 20 C.F.R. § 655.731(c)(7)(ii). Defendants note there was no "actual meeting of the minds between the employer and the nonimmigrant that the employment relationship [was] terminated," because Varess did not understand Shadjareh's text message stating Persian Broadcast could no longer afford to pay him to signal a notice of termination. Def. MSJ at 16; see

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

also Gupta v. Jain Software Consulting, Inc., 2007 WL 1031365 at *4 n.3 (ARB Mar. 30, 2007).

Further, defendants rebut Persian Broadcast's proposition that Varess's "period of authorized employment" did not include any time after the expiration of his visa or departure from the United States. Def. MSJ at 12. Defendants note that the Department of Labor's regulations explicitly state that "[a] labor condition application (LCA) certified under § 655.750 is valid for a period of employment indicated by the authorized [Department of Labor] official," and Persian Broadcast does not dispute the second LCA was authorized. Alternatively, defendants note that even if the "authorized employment" language in the regulations contemplates additional authorization, the regulations can be "reasonably understood as referring to the permission [Customs and Border Patrol] grants a nonimmigrant to stay in the United States." Def. MSJ at 12; 22 C.F.R. § 41.112(a). Defendants note that when Varess returned to the United States on September 3, 2013, he was admitted by Customs and Border Patrol until September 2015. Def. MSJ at 12. As such, defendants argue that for purposes of the LCA, Varess was an authorized employee. Def. MSJ at 12-13.

Persian Broadcast replies by acknowledging that there was no *bona fide* termination of Varess's employment, but insists that no *bona fide* termination was required to terminate Varess's employment under the second LCA because Varess's second E-3 visa was not properly issued, or in the alternative the E-3 visa was not renewed when Varess returned to Australia in November 2013.

An E-3 worker must receive the required wage "beginning on the date when the nonimmigrant 'enters into employment' with the employer." 20 C.F.R. § 655.731(c)(6); 8 U.S.C. §§ 1182(t)(1)(A), 1182(t)(3)(C)(vii)(I)-(III). The LCA binds the employer to pay the required wages for the duration of the employment relationship unless certain narrowly-defined exceptions are met. 20 C.F.R. § 655.731(a)(2)(viii). The employer must pay with the required wage even if the LCA is withdrawn, suspended, or invalidated, as long as the employer continues to employ the worker. 20 C.F.R. §655.750(b)(3), (c)(3).

The ARB found that Persian Broadcast "failed to pay [Varess] the required wage under the first LCA which was $45,000 per year. [Persian Broadcast] also failed to pay

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

[Varess] the required wage of $60,000 for the second LCA period. Because [Persian Broadcast's] president signed and filed both LCAs with the [Department of Labor], it was legally obligated to pay [Varess] the specified wages when [Varess] entered into employment until the LCA period expired unless an exception to that obligation applied." CAR at 812 (ARB decision Sept. 26, 2019). The ARB determined there was no exception to that obligation because no *bona fide* termination of the employment occurred, and it remanded the case to the ALJ to calculate back wages. Id. The ALJ concluded, on remand, that Persian Broadcast owes Varess $183,794 (gross salary of $204,375 less the $20,581 Varess received). CAR at 824.

The Court concludes that the ARB's decision to award Varess $183,794, by calculating back wages owed for a four-year period, including the two-year period from LCA 1 and the two-year period from LCA 2, was not arbitrary and capricious. The ARB correctly noted that the plain language of the statute did not list an exception for the expiration of an existing E-3 worker's visa or for travel to outside the United States. As such, the ARB rejected such exceptions as being unauthorized. See Syed v. M-I, LLC, 853 F.3d 492, 501 (9th Cir. 2017) (when a provision contains express exceptions, "the familiar judicial maxim *expressio unius est exclusion alterius* counsels against finding additional, implied, exceptions").

The Court notes that the ARB did not find that an LCA is binding on an employer when an employee does not have an E-3 visa and never enters the United States. Rather, the ARB made the factual finding that in this specific circumstance, the second LCA was binding because Varess "entered into employment" under the second LCA when he "entered the U.S. and began or continued working for [Persian Broadcast] under the second LCA on or about September 12, 2013." CAR 812. The ARB reasonably found, and the factual record supports, that Customs and Border Protection's admission of Varess to the United States from September 2013 to September 2015—whether or not in error—was sufficient to authorize Varess's employment under the second LCA, because he had already "made himself available to work" and "received authorization for travel to the U.S." under the terms of the LCA. 8 U.S.C. 1182(t)(A)(i); 20 C.F.R. 731(c)(6)(i) and (i)(i).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O' JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

The ARB's finding is supported by additional facts in the administrative record, including records that show that (1) Persian Broadcast continued to accept work from Varess after the first LCA ended, (2) Shadjareh signed a letter confirming that Varess was working for him as a sports producer until September 2015 with a monthly salary of $5,000, and (3) on November 13, 2013, Shadjareh sent another letter to the U.S. Consulate in Sydney, Australia, stating that he wished to continue to engage in Varess's services as a TV producer for a salary of $60,000. CAR 800. Further, the Court acknowledges that the regulations are silent as to whether *bona fide* termination is still required to relieve an employer of his duty to pay wages when the Department of Labor has approved a second LCA for a previously authorized employee, and that employee has been admitted to the United States through Customs and Border Protection, even if that employee is no longer in the United States.

A court is required to defer to an agency's interpretation of a statute when the statute is silent or ambiguous about an issue, provided that the interpretation is based on a permissible construction of the statute. See Alaska Dep't of Health & Social Servs. v. Ctrs. for Medicare & Medicaid Servs., 424 F.3d 931, 939 (9th Cir. 2005). The ARB's conclusion that Persian Broadcast was not relieved of its payment obligations due to Varess's failure to renew his visa and departure from the United States was a reasonable interpretation of the statutory and regulatory ambiguities to which this Court must defer. See id. Neither the statute nor the regulations speak directly to this narrow, factual question, and for the reasons set out above, the ARB's resolution of these ambiguities by concluding that an employer remains bound by its wage obligations to an existing E-3 worker who can perform his duties abroad notwithstanding the worker's visa's expiration and overseas travel, is a reasonable interpretation that is entitled to deference.

### C. Defendants' Counterclaim for Enforcement of Judgment

Defendants move for summary judgment on their counterclaim to enforce the ARB's order, and request that the Court enter a judgment directing Persian Broadcast to pay Varess or the Department of Labor for Varess's benefit $183,794, plus pre- and post-judgment interest. Defendants argue that a judgment in this enforcement action will fully effectuate the Department of Labor's authority by ensuring that the back wages the Department of Labor found are due are paid, in order to protect nonimmigrant workers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'   JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

like Varess and their American counterparts. Cyberworld Enter. Techs., Inc. v. Napolitano, 602 F.3d 189, 198 (3d Cir. 2010) (The Department of Labor's enforcement of LCAs "vindicate[s]" rights that "are of a 'public' nature, since [the Department] is acting to protect the U.S. workforce from displacement by [nonimmigrant visa] recipients and to enforce the rules of the immigration system."). Defendants note that Persian Broadcast has not complied with the Secretary of Labor's order. Def. MSJ at 22.

Further, defendants argue that the Court should award pre-judgment interest at the rate set by the ARB, and award post-judgment interest pursuant to 28 U.S.C. § 1961(a). Def. MSJ at 22. Under ARB precedent, pre- and post- judgment interest are awarded using the rate charged on the underpayment of federal income tax, 26 U.S.C. § 6621(a)(2), which is currently at 3 percent. Mao v. Nasser Eng'g & Comput. Servs., 2008 WL 5079135 (ARB Nov. 26, 2008). However, defendants note that the Ninth Circuit has held that interest should be awarded pursuant to 28 U.S.C. § 1961(a) at "a rate equal to the weekly average 1-year constant maturity Treasury yield," which is currently at .28 percent. W. Pac. Fisheries, Inc. v. S.S. President Grant, 730 F.2d 1280, 1289 (9th Cir. 1984). Persian Broadcast does not respond to defendants' requested interest rates.

When a federal agency such as the Department of Labor issues an administrative order pursuant to its delegated statutory authority, the agency or the United States may obtain a judgment to enforce that order. See, e.g., United States v. Occidental Chem. Corp., 200 F.3d 143, 149 n.6 (3d Cir. 1999) (suit to enforce Environmental Protection Agency's order under the Comprehensive Environmental Response, Compensation, and Liability Act).

The Court finds that enforcement of the ARB's order directing Persian Broadcast to pay Varess $183,794, plus pre- and post- judgment interest is appropriate here. The ALJ found, and the ARB affirmed, that Varess should be awarded both pre- and post-judgment interest using the rate charged on the underpayment of federal income taxes. Mao v. Nasser Eng'g & Comput. Servs., 2008 WL 5079135 (ARB Nov. 26, 2008); CAR 824. However, as defendants note, the Ninth Circuit has held that interest should be awarded pursuant to 28 U.S.C. § 1961(a), "unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate." W. Pac. Fisheries, Inc., 730 F.2d at 1289. Here, the Court agrees with defendants that pre-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O' JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

judgment interest should be awarded at the higher rate set by the ARB because the Court's judgment enforces the ARB's order and the case involves wages owed for as much as a decade. Accordingly, the Court awards pre-judgment pursuant to 26 U.S.C. §6621(a)(2), and post-judgment interest pursuant to 28 U.S.C. § 1961(a).

## V.    CONCLUSION

In accordance with the foregoing:

1) The Court **DENIES** Persian Broadcast's motion for summary judgment.

2) The Court **GRANTS** defendants' cross-motion for summary judgment on their counterclaim and orders Persian Broadcast to pay Varess $183,794 plus pre-judgment interest pursuant to 26 U.S.C. § 6621(a)(2), and post-judgment interest pursuant to 28 U.S.C. § 1961(a).

IT IS SO ORDERED.

|  |  |  |
|---|---|---|
| Initials of Preparer | CMJ | 00 : 20 |